IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CHRISTOPHER RYAN MAHON,           )
     Plaintiff,                          )           Civil Action No. 7:17-cv-00406
                                        )
v.                                  )
                                        )           By:  Elizabeth K. Dillon
KILGORE, *et al.*,                  )                United States District Judge
     Defendants.                         )

**MEMORANDUM OPINION**

Plaintiff Christopher Ryan Mahon, a Virginia inmate proceeding *pro se*, brings this civil

rights action pursuant to 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments of the

United States Constitution.  Mahon names medical and correctional staff of the Southwest

Virginia Regional Jail (Jail) as defendants.[1]  Mahon was housed at the Jail as a pre-trial detainee

in November 2016 and until a plea and sentencing hearing on March 2, 2017, for a probation

violation.  He was later transferred to a state correctional facility.[2]  Mahon alleges that he

experienced cruel and unusual punishment from a lack of adequate medical care involving his

vision, a sinus infection, and prescriptions between November 25, 2016, and when he

commenced this action in August 2017.  He further alleges he was denied due process and equal

protection due to his living conditions and an investigation at the Jail.  Defendants Deel,

Dunford, R. Dye, Henley, Hess, Kilgore, Nash, and Woodlief (collectively, the "correctional

---

[1] Mahon also named "Medical Staff" as a defendant, but because "Medical Staff" is not a proper defendant, it will be terminated as a party.  *See, e.g.*, Fed. R. Civ. P. 21; *Ferguson v. Morgan*, No. 1:90cv06318, 1991 U.S. Dist. LEXIS 8295, at *2-4, 1991 WL 115759, at *1 (S.D.N.Y. June 20, 1991) (concluding that a group of personnel, like "medical staff," is not a "person" for purposes of § 1983).
    Defendants Kimmell, Hudson, and Shields entered the case for the defendants named Keiosk #5400, Keiosk #6370, and Keiosk #7489-7409, respectively.  Accordingly, Kimmell, Hudson, and Shields will be substituted for the Keiosk defendants.  Fed. R. Civ. P. 21.

[2] Consequently, requests for equitable or injunctive relief as to the living conditions at the Jail are moot. *See, e.g.*, *Incumaa v. Ozmint*, 507 F.3d 281, 286-87 (4th Cir. 2007); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

defendants") filed a motion to dismiss, and defendants Smith, A. Dye, Kimmell, Hudson,

Shields, and Palumbo (collectively, the "medical defendants") each filed a motion for summary

judgment.[3]  Mahon filed responses to these motions, and the time for defendants' replies has

expired.[4]  Mahon subsequently filed a motion to compel discovery and a motion for leave to file

an amended complaint.  After reviewing the record, the court denies Mahon's motions to compel

and to amend and grants defendants' dispositive motions.

---

[3] Plaintiff frequently relies on buzzwords like, *inter alia*, freedoms of religion, press, and access to courts, in his submissions, and defendants addressed the main claims and also meritless issues they believed the court could construe, such as failure to protect and retaliation claims.  A defendant is not responsible for a plaintiff's obligation to plead a claim or the court's obligation for liberal construction, and the court declines to construe or construct such claims because they were not "fairly presented" or are not entitled to an assumption of truth.  *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (discussing liberal construction); *Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring) (noting the court does not act as an inmate's advocate, is not expected to construct full blown claims from sentence fragments, and does not conjure up questions never squarely presented); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that a district court is not expected to assume the role of advocate for a *pro se* plaintiff).  Instead, the court addresses those main claims Plaintiff has "fairly presented."

[4] Mahon was granted until December 26, 2017, to respond to defendants' motions.  By operation of the prison-mailbox rule, Mahon's responses at docket entries 66–68 and 71–72 were timely filed.  *See, e.g.*, *Houston v. Lack*, 487 U.S. 266, 275 (1988) (describing the prison-mailbox rule).

The court declines to consider Mahon's untimely filings at docket entries 88 and 94.  Mahon has never sought permission to file these documents out of time.  *See* Fed. R. Civ. P. 6 (permitting a litigant to request an extension of time).  Mahon knew of the obligation to file within time limits; he had requested, and was granted, a prior extension of time to comply with the deadline.  *See* docket nos. 64 and 65.  The Supreme Court has made clear that even *pro se* litigants must follow rules of civil procedure.  *See McNeil v. United States*, 508 U.S. 106, 113 (1980) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.  As we have noted before, in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." (internal footnote and quotation marks omitted)); *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809-10 (7th Cir. 2005) (recognizing a district court may ignore and not consider additional facts a litigant proposes in violation of court orders or rules of procedure); *Wayne v. Jarvis*, 197 F.3d 1098, 1104 (11th Cir. 1999) ("Liberal construction does not mean liberal deadlines." (citing *Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir. 1993))); *Jourdan v. Jabe*, 951 F.2d 108, 109-10 (6th Cir. 1991) (holding that a *pro se* litigant is not entitled to special consideration to excuse a failure to follow a straightforward procedural requirement that a lay person can comprehend as easily as a lawyer); *see also* Fed. R. Evid. 101 (stating those rules apply to all proceedings in United States courts without a special exception for *pro se* litigants).  Accordingly, untimely filed docket entries 88 and 94 are not considered.

The court also does not consider the documents at docket entries 73 and 83 that were received after December 26, 2018, from people not a party to this case.  *See* W.D. Va. Gen. R. 6(e) (directing the Clerk to not file any document not from a *pro se* party or from an attorney of record for that party).  None of the filers had moved to intervene to become a party under Federal Rule of Civil Procedure 24.

# I. BACKGROUND

## A. Allegations Involving the Correctional Defendants

Officers Dye, Deel, Dunford, Henley, Hess, Nash, and Woodlief handcuffed and detained Mahon and seven other inmates in the dayroom in February 2017 on suspicion of being intoxicated after other inmates had tested positive for intoxicants. The inmates' cells were searched, and a contraband drug was found. One of the inmates consented to the urine test, but the other six did not. Dunford told Mahon that he would be placed in "cell restriction" if he, too refused. Because he was standing in front of the six inmates who refused the test, Mahon felt compelled to refuse or be at risk of having to fight them or leave the pod.

Mahon refused the urine test and was charged with the disciplinary infraction of "refusing to take a drug or alcohol test." He was "strip searched" and secured in his cell in pre-hearing administrative segregation status like Dunford had warned. Unknown staff notified three state courts of Mahon's refusal to submit to the urine test. Notably, the inmate offense report showed Mahon admitted being guilty of the charge.

All of the inmates in the pod, including Mahon, were segregated in their cells for about two days because Captain Kilgore was "tired" of inmates "getting drugs in his facility." After two days, all inmates were released from segregation except for Mahon and the six others who remained confined to their cells for seven more days. Captain Kilgore kept these inmates in segregation longer because he believed they were smuggling drugs into the Jail.

On March 2, 2017, Mahon left the Jail as a pre-trial detainee and returned a convicted prisoner. He was transported to the courthouse for a plea hearing for the pending probation violation charge. Mahon's counsel and the prosecutor had agreed sometime before the hearing that Mahon would plead guilty and serve between eighteen and twenty-four months' incarceration. After reading the Jail's report at some point, the prosecutor instead sought a

3

sentence above the agreed-upon range.  The court ultimately sentenced Mahon to forty-eight months' incarceration, double the expected term.  Sometime after the hearing, Mahon was moved from medium security and placed in maximum security housing at the Jail.  Dunford told Mahon that he had been moved to maximum security for thirty days on Captain Kilgore's orders.

Mahon believes the cell and strip searches, segregation, and transmittal of the report constitute illegal searches and seizures and violate due process and equal protection.  Mahon also believes that the increased sentence violated due process because it was based on the report from the Jail and because he was not told at the time that refusing the urine test would result in double the sentence of incarceration.  Mahon further asserts:

> The guards always escort us to medical and back[,] and I am sure that there is some sort of retaliation for filing grievances and on one occasion Lt. Henley took me to medical in October or November 2016 because of one of the grievances and said to the nurse and myself, "Mahon[,] didn't you have a bad car wreck and hurt your shoulder before you was arrested[?"]

## B.  Allegations and Facts Involving the Medical Defendants

Mahon complains that he "was refused medical attention" at the Jail starting on November 25, 2016.[5]  Mahon asserts:

> I am referred for outside medical provider and after my legal issues caused me not to be able to go self pay-furlough[,] only then my medical status changed to say I don't need eye care and this care is medically necessary.  I cannot see the T.V.[,] my Bible[,] or my legal work.  Sur[el]y not having the equipment needed medically to accomplish these tasks falls under the umbrella of medical necessity standard.

Mahon further asserts that one of three state courts had signed an order allowing Mahon to receive a medical furlough, but he was not allowed to go.  Mahon alleges he now experiences eye strain, burning eye pain, and camera flashes as a result of not having had eyeglasses for a year.

---

[5] The complaint does not challenge medical acts or omissions before November 25, 2016.

Mahon relies on his administrative records to define his claims against the medical defendants, and the medical defendants provided the pertinent medical records. These documents reveal the following facts.

Nurse Dye completed Mahon's screening at the Jail on September 6, 2016. She noted that Mahon had a history of abusing alcohol, prescription opiates, prescription benzodiazepines, and methamphetamine and was taking the medications Neurontin, Elavil, and Wellbutrin before arriving at the Jail. Nurse Dye also marked that Mahon did not use any physical aids such as contact lenses or eyeglasses and did not have a medical history of headaches or vision problems. Nurse Dye did mark that Mahon had joint issues and back pain, primarily due to "[l]eft shoulder AC separation[.]" About two weeks later on September 21, Mahon filed a sick call request form (request) complaining of "very bad eyes" and wanting eyeglasses.

Mahon met with a facility doctor on October 17. Mahon reported that the previously prescribed pain medications were not adequately numbing shoulder and back pain. Mahon also reported that he used to have prescription eyeglasses, had broken and lost them, and had not had an eye exam since 2011 or 2012. The doctor assessed "shoulder pain" and "poor vision" and concluded, "Plan: Increase Elavil and [i]buprofen. Check visual acuity[.] Pursue furlough for eye app[ointment]t." The doctor approved the prescriptions of Elavil and ibuprofen for sixty days, meaning they would expire on December 15. Mahon's visual acuity test taken that same day measured his eyesight as 20/50 and 20/30 in his right and left eyes, respectively, with overall 20/30 vision.

About two weeks later, Mahon's counsel for the then-pending probation violation charge called medical staff on November 1, asking for an update on the furlough request. A nurse noted in the medical record, "[Counsel] asked if doctor had recommended this. I told him in doctor notes it read 'pursue furlough for eye appt'. He then asked how much it would be if we

transported patient. I told him $200 officers, mileage $6ish, initial office visit $125, and eyeglasses $85. He said he would get back with me."

Plaintiff alleges that the medical defendants began violating federal law as of November 25, 2016. On November 25, Mahon filed a request about a "bad sinus infection," "head and chest cold," and runny nose. Mahon filed another request on November 29, writing, "[M]y back and shoul[er] pain is getting worse[.] [I] need to see the doctor again[.]"

Nurse Shields responded to the first request about a cold on November 30, stating, "[P]laced on nurse sick call." Nurse Kimmell responded to second request about pain on December 2, stating, "[Y]ou have been placed o[]n the doctor's list."

Mahon filed a request on December 14, noting, "[I] put in a request about a head cold/sinus infection over 2 weeks ago[.] [I]t[']s getting worse[.] Please [I] nee[d] to see medical department[.]"

Mahon filed a request on December 16, noting, "[M]y meds are not on the med cart[.] [W]ill you please tell me why[?]"

Nurse Shields answered the request from December 14 on December 28, asserting that Mahon had been seen in the medical department on December 23. Mahon disputes this assertion, claiming that he had not been seen in the medical department on December 23. Nurse Shields also answered the request from December 16 on December 28, noting, "[Y]ou do not currently have any active meds[.]"

Mahon filed a request on December 30, complaining:

> [I] was not seen by medical on 12/23[.] [I] have not been to medical in over 2 months[.] [M]y meds have been stopped without seeing a nurse or doctor[.] [I] have told security and filed 2 gr[ie]vances[.] [T]his is a constitutional violation[.] [Y]our medical department is being deliberately ind[i]f[f]erent to my serious medical needs[.] [I] am going to be force to file suit[] in federal court if [I] am not seen[.]

Nurse Palumbo, who served as the Health Services Administrator (HSA) at the Jail, received Mahon's grievance appeal that was a re-routed to the medical department on January 2, 2017. Mahon had written in the grievance and appeal:

> [I] have several medical request[s] that are un[-]answered and my medicine has run out[.] [T]he only explanation is it[']s Christmas and the d[octor] did not come in[.] [T]his is over 10 days now and [I] still have not been to sick call. . . . [I] have addressed these medical issues over and over to medical.[] [M]y medical needs are not being attended to[.]

On January 6, 2017, a nurse practitioner examined Mahon, confirmed that the prescriptions for Elavil and ibuprofen had expired, renewed them for ninety days, and also prescribed Claritin for ninety days. HSA Palumbo answered the re-routed grievance that same day, noting Mahon had seen the nurse practitioner. Nurse Kimmell similarly replied to the grievance from December 30 on January 9, 2017, noting that Mahon had seen the doctor on January 6 and the issues had been addressed.

Two months later on March 4, 2017, Mahon filed a new request about having "bad" headaches and wanting to see a doctor for eyeglasses and back pain. He filed another request on March 8, wanting to be seen for a "bad head and chest cold." Nurse Shields responded to the first request on March 7, noting Mahon had been placed on the sick call list. Nurse Hudson responded to the second request on March 9, also noting Mahon had been placed on the sick call list.

Mahon filed another request on March 13, complaining, "[I] have a bad head and chest cold[.] [I] have put in 2 previous request[s] over this and my eye glasses issues[.] [H]owever, it[']s been over 10 days on both[.]"

Mahon filed a grievance on March 17 because, despite Nurses Shields' and Hudson's assertions that he was on the sick call list, Mahon had not yet been seen during the prior two weeks.

Nurse Hudson responded to the request from March 13 on March 19, noting Mahon had been placed on the sick call list. On March 21, Nurse Shields responded to the grievance, explaining that Mahon had been seen in January and February, was on the sick call list, and would be seen again in a "timely manner." Mahon appealed the grievance that same day.

Mahon was seen in the medical department the next day on March 22. A nurse diagnosed him with a common cold and started the "protocol" for him to be seen by the doctor.

HSA Palumbo answered the grievance appeal on March 24, noting Mahon had met with a nurse already on March 22 and had been "started on protocol."

On April 20, Mahon met with the facility doctor and complained of increased low-back pain and headaches and reiterated his need for eyeglasses. The doctor diagnosed him with chronic low-back pain and poor visual acuity and prescribed a muscle relaxant for ninety days, meaning it would expire on July 18.

On May 17, Mahon filed a request form asking for eyeglasses. Nurse Shields answered on May 23, writing, "Eye glasses are not provided by medical. You may request a furlough to obtain glasses or your family may bring you glasses."

Also on May 23, Mahon filed another grievance, explaining, "I need glasses[.] [I] have been examined by the [doctor] and referred to an eye [doctor]. [I] can[']t read my bible to practice my religion[.] [T]his is d[e]lib[e]rate ind[i]ff[e]rence to my serious medical need and a violation of my constitutional ri[ght]." On June 1, Nurse Shields deemed the grievance not valid because Mahon's vision was recorded as 20/30, and she told him to ask his counselor for reading eyeglasses. On his grievance appeal, Mahon noted that he has "several charges in diff[e]rent courts that is making [the furlough] very difficult." Mahon further noted that his "vision is very bad[,]" he "ha[s] a bad stigmatison [sic][,]" and he had tried three different strength reading eyeglasses that did "not work." He further explained that he was still "getting headaches" and

could "not see to read a large print Bible." HSA Smith responded to the appeal on June 5, explaining, "Poor vision is not considered a medical necessity. You are not currently recommended to be referred for optometry."

Mahon filed another grievance on July 30, writing, "[I] have put [i]n se[]veral time[s] to medical for diff[e]rent reasons[.] [I] have been told [I']m on sick call lists and doctor[']s lists but never go[.] [I] haven[']t seen anyone from medical for months[.] [M]y medicine has ran out to[o.] [I] need medical atte[n]tion please." Staff told Mahon on August 1 that staff would review the sick call requests and medication list and let him know.

Mahon had an appointment with a nurse and with nurse practitioner on August 1 and 10, respectively. These providers authorized prescriptions for, *inter alia*, Tylenol and Elavil and a second visual acuity test.

After Mahon commenced this action in August 2017, staff conducted his second visual acuity exam on October 6, 2017. His vision scored 20/30 for each eye and 20/20 together. The facility doctor signed a request that Mahon be approved for a "routine" consult for an optometrist to repeat the eye exam. The doctor noted that Mahon had been at the Jail for about fourteen months and had headaches and saw flashing lights for the prior twelve months. Three days later, another doctor reviewed and denied the request, noting, "This patient's V[isual] [A]cuity on with both eyes is 20/20. This doesn't seem to be the reason for headaches. Optometry referral is not clinically indicated." Plaintiff has since been transferred out of the Jail.

## II. PRELIMINARY MOTIONS

Mahon filed a motion for leave to file an amended complaint after the case became ripe for adjudication. Although he did not attach a proposed amended complaint, he does describe the claim he wants to add against defendant Officer Hess. Mahon alleges that Hess is "having

conversations" with other inmates as "retaliation" for commencing this action.  Mahon admits he is "paranoid" but thinks that Hess is manipulating him and other inmates to fight.

The court will not grant leave to amend without actually viewing the proposed amended complaint.  *See Long v. Satz*, 181 F.3d. 1275, 1279-80 (11th Cir. 1999) ("A motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment."); *Wolgin v. Simon*, 722 F.2d 389, 394-95 n.10 (8th Cir. 1983) (collecting cases holding that it is inappropriate for a court to grant a motion to amend without viewing the amended pleading); *see also Williams v. Wilkerson*, 90 F.R.D. 168, 169 (E.D. Va. 1981) (recognizing that it is appropriate for a party to attach a copy of a proposed amended pleading with a motion to amend because "authorities . . . tend to support such a rule").  Moreover, the "substance" of the claim described briefly in the motion and declaration in support does not sufficiently state a plausible claim of retaliation.  *See* discussion *infra* Section III.A. (discussing plausibility).  Mahon must present more than a conclusory allegation of retaliation, and he fails to explain how the "retaliation" of "talking" constitutes an impairment of any right.  *See, e.g.*, *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994); *Am. Civil Liberties Union v. Wicomico Cty.*, 999 F.2d 780, 785 (4th Cir. 1993).  Accordingly, the motion to amend is denied as futile.  *See, e.g.*, Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Mahon filed a motion to compel discovery with his responses in opposition to defendants' dispositive motions.  However, Mahon has not claimed that the sought discovery was necessary to present facts essential to justify his opposition to the motions for summary judgment.  Also, discovery is not necessary to review the sufficiency of a complaint challenged by the motion to dismiss.  *Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990).  Accordingly, the motion to compel is denied as moot.

## III. DISCUSSION

### A. Correctional Defendants' Motion to Dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's allegations must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, *supra*.

In determining whether the plaintiff has met this plausibility standard, the court must accept as true all well-pleaded facts in the complaint and in any documents incorporated into or attached to the complaint. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Further, it must "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but it need not "accept legal conclusions couched as facts or 'unwarranted inferences, unreasonable conclusions, or arguments,'" *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

Mahon invokes "equal protection" and "retaliation" in his narrative, but such labels and conclusions are not entitled to an assumption of truth or satisfy Mohan's responsibility to sufficiently plead all elements of a claim. *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting labels and conclusions are not sufficient to state an actionable claim); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (noting a pro se plaintiff must still allege facts sufficient to state all the elements of a claim); *Adams*, 40 F.3d at 74 (noting an inmate must present more than conclusory allegations of retaliation). A correctional officer's

question about a prior car accident does not set forth a retaliation claim. *Cf. Wicomico Cty.*, 999 F.2d at 785. Accordingly, any equal protection or retaliation "claim" against the correctional defendants is dismissed for failing to state a claim upon which relief may be granted.

Mahon takes great offense to correctional defendants reporting Mahon's refusal to take a urine test to a state court. It is notable that Mahon was a pre-trial detainee on probation while waiting for the final adjudication of a probation violation charge. To that end, Mahon would have been subject to drug tests and did not have the asserted "expectation of privacy" due to his probationary status and being imprisoned, even as a pre-trial detainee. *See, e.g.*, *Samson v. California*, 547 U.S. 843, 849-53 (2006) (recognizing that society does not extend an expectation of privacy to someone on parole because it is similar to imprisonment); *Griffin v. Wisconsin*, 483 U.S. 868, 872 (1987) (recognizing probation diminishes a probationer's reasonable expectation of privacy and allows an officer to search a probationer's home without a warrant); *Willis v. Artuz*, 301 F.3d 65, 69 (2d Cir. 2002) (recognizing those in custody lack expectation of privacy in a cell).

Mahon fails to show his brief segregation as a pre-trial detainee constituted unconstitutional punishment in violation of the Due Process Clause of the Fourteenth Amendment. "[N]ot every inconvenience encountered during pre[-]trial detention amounts to 'punishment' in the constitutional sense." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). Only those acts imposed with an expressed intent to punish or not reasonably related to a legitimate non-punitive governmental objective violate a pre-trail detainee's due process right to be free from punishment. *Bell v. Wolfish*, 441 U.S. 520, 538, 561 (1979).

Mahon complains that he was strip searched and confined to his cell for about a week as a pre-trial detainee and later transferred to maximum security as a convicted prisoner. Mahon acknowledges that by that time of the searches, he was at the Jail while on probation and as a

pre-trial detainee for a probation violation, other inmates had tested positive for contraband intoxicants, he and others were suspected of drug smuggling, a contraband drug was found in one of these suspect's cell during a search, and he refused a urine test for intoxicants. Given these facts, Mahon fails to state a plausible claim that the correctional defendants expressed an unlawful intent to punish or lacked a legitimate non-punitive governmental objective by searching Mahon, searching his cell, and segregating him temporarily. Even if Mahon had an expectation of privacy with regard to his genitals, his strip search in the presence of male guards and male inmates does not state a plausible claim for relief. *See, e.g.*, *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 341 (2012); *Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir. 1981). Mahon was strip searched after correctional defendants' suspicion of drug smuggling was confirmed and before he was segregated in his cell. *See, e.g.*, *Bell*, 441 U.S. at 558-59 (holding it lawful to strip search to search for contraband). Moreover, Mahon also fails to show his transfer to a maximum security pod after his conviction was unlawful. The transfer alone does not constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See, e.g.*, *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Accordingly, the correctional defendants' motion to dismiss is granted for these claims.

 The court also dismisses Mahon's claims related to his unexpectedly higher sentence. Mahon seeks damages from the correctional defendants because Officer Dye created the allegedly unlawful report, unknown staff unlawfully transmitted the report to state courts, and one state court unlawfully considered it and imposed an unlawful sentence. Essentially, Mahon argues that, had the unknown staff not sent it to the state court, he would have received a lower, more appropriate sentence.

 These claims implicate the invalidity of the state sentence. First, Mahon argues that the state court should not have considered the report about the urine test to increase the sentence, but

such a challenge should be brought via a habeas petition.  *See, e.g.*, *Edwards v. Balisok*, 520 U.S. 641, 645-47 (1997) (stating that a § 1983 damages claim arguing that due process rights violations resulted in longer sentence should be brought as habeas corpus petition).  Without favorable termination of the sentence, however, Mahon is barred from seeking damages from the correctional defendants for transmitting the report to the state court.[6]  *See, e.g.*, *Heck v. Humphrey*, 512 U.S. 477, 486-88 (1994) (stating that a § 1983 claim that would necessarily demonstrate the invalidity of a sentence should be brought as a habeas claim); *see also Knowlin v. Thompson*, 207 F.3d 907, 908-09 (7th Cir. 2000) (noting a district court may consider *Heck sua sponte*).

Accordingly, the court grants correctional defendants' motion to dismiss.  Claims implicating the validity of the state sentence are dismissed without prejudice, and the remaining claims against the correctional defendants are dismissed with prejudice.  *See Omar v. Chasanow*, 318 F. App'x 188, 189 (4th Cir. 2009) (modifying district court's dismissal with prejudice under *Heck* to be dismissed without prejudice to allow plaintiff to refile if favorable termination occurs).

## B.  The Medical Defendants' Motions for Summary Judgment

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists only where the record, taken as a whole, could lead a

---

[6] The court also notes that Mahon did not have a recognizable property interest in the initial agreement between his counsel and the prosecutor that Mahon would receive a sentence between eighteen and twenty-four months.  The state court was free to "accept or reject" a proposed plea agreement, and a plea proposal is "not a binding contract" if "the court had not yet accepted it." *See* Va. S. Ct. R. 3A:8; *Lampkins v. Commonwealth*, 44 Va. App. 709, 721, 607 S.E. 2d 722, 728 (2005) (citing *Commonwealth v. Sandy*, 257 Va. 87, 91, 509 S.E. 2d 492 (1999)).

Also, Mahon's claim falls outside *Covey v. Assessor of Ohio Cty.*, 777 F.3d 186, 197 (4th Cir. 2015), which held that *Heck* may not apply if a conviction rests on a guilty plea.  While Mahon did plead guilty to the underlying conduct that brought him to the Jail, his instant claim is to the state court's calculation of the sentence only and is not based whatsoever on the criminal conduct or admission of guilt that lead to the sentence being imposed.

reasonable jury to return a verdict in favor of the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In making that determination, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (*en banc*) (quoting *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899 (4th Cir. 2003)).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citations omitted). Moreover, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* Instead, the nonmoving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990) (quoting *Anderson*, 477 U.S. at 249-50). A plaintiff cannot use a response to a motion for summary judgment to amend or correct the complaint challenged by the motion for summary judgment. *Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009).

A plaintiff must show that a defendant acted with deliberate indifference to a serious medical need to state a claim under the Eighth or Fourteenth Amendment for an unconstitutional denial of medical assistance. *See, e.g.*, *West v. Atkins*, 487 U.S. 42, 48 (1988); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001); *Conner v. Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994). An inmate must show a "significant injury" from deliberate indifference to a serious medical need. *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014).

Deliberate indifference requires a state actor to have been personally aware of facts indicating a substantial risk of serious harm, and the actor must have actually recognized the

existence of such a risk. *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990); *see Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) ("[T]he evidence must show that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'"). "A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." *Miltier*, 896 F.2d at 851-52. A prisoner's disagreement with medical personnel about the course of treatment does not state a § 1983 claim. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

To succeed with an unconstitutional medical treatment claim against the medical defendants as non-treating staff, Mahon must show that each medical defendant was personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly authorized or was deliberately indifferent to the medical provider's misconduct when even a lay person would understand that the medical provider is being deliberately indifferent. *Miltier*, 896 F.2d at 854. Supervisory officials are entitled to rely on the professional judgment of the treating medical providers. *Id.* Supervisory liability is not established merely by showing that a subordinate was deliberately indifferent to a plaintiff's medical need. *Id.*

A serious medical need is a condition that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the *necessity* for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (emphasis added). Conditions or delays that cause or perpetuate "excruciating" pain also may be a serious medical need. *Loe v. Armistead*, 582 F.2d 1291, 1296 (4th Cir. 1978). When treatment is delayed, a constitutional "violation only occurs . . . if the delay results in some substantial harm to the patient." *Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008).

There is no dispute of material fact, and no reasonable trier of fact could find the medical defendants exhibited deliberate indifference to a serious medical need or that Mahon experienced "significant injury." Accordingly, the court grants the medical defendants' motions for summary judgment.

Mahon's uncorrected visual acuity of 20/30 as of October 2016 did not present as a condition implicating cruel and unusual punishment, and any delay in receiving eyeglasses did not impose a substantial harm to his vision because it measured 20/20 a year later in October 2017. *See, e.g.*, *Canell v. Multnomah Cty.*, 141 F. Supp. 2d 1046, 1057 (D. Or. 2001) (recognizing a need for reading eyeglasses did not present a serious medical need); *cf. Koehl v. Dalsheim*, 85 F.3d 86, 87 (2d Cir. 1996) (finding a serious medical need for near blindness, severe double vision, and loss of depth perception from a prior head injury).

Similarly, the record does not support any inference in Mahon's favor that routine headaches, at best presented to a few of the medical defendants as related to eye strain, constituted a *serious* medical need. *See, e.g.*, *Doty v. Cty. of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994) (holding nausea, shakes, headache, and depressed appetite due to unresolved family stress were not serious medical needs); *O'Loughlin v. Doe*, 920 F.2d 614, 617 (9th Cir. 1990) (finding headaches, nausea and pains were not a "serious medical need" and denial of aspirin and antacid for them did not constitute a constitutional violation); *Hearne v. Baughman*, No. 2:16-cv-1357, 2017 U.S. Dist. LEXIS 41722, at *8, 2017 WL 1079944, at *3 (E.D. Cal. Mar. 21, 2017) (Barnes, Mag. J.) ("[T]he complaint's allegation that plaintiff suffered high blood pressure, dizziness and a headache only vaguely states a medical need, not a serious medical need."); *Shelby v. Skrah*, No. 1:15-cv-01457-TC, 2017 U.S. Dist. LEXIS 39159, at *4, 2017 WL 1027043, at *2 (D. Or. Jan. 10, 2017) ("Plaintiff's alleged medical need was a headache. While annoying and perhaps painful, it is not a serious medical need of constitutional proportion.

There is a *minimis* level of imposition with which the Constitution is not concerned." (citing *Canell v. Multnomah Cty.*, 141 F. Supp. 2d 1046, 1054 (D. Or. 2001))); *Borrelli v. Askey*, 582 F. Supp. 512, 513 (E.D. Pa. 1984) (finding slight visual impairment that caused mild headaches and mild tension not a serious medical need).

Mahon alleges in his pleading that he has since experienced eye strain, burning eye pain, and camera flashes from not have eyeglasses for a year. However, the record does not establish that he presented these specific complaints to the medical defendants during the pertinent period. Deliberate indifference "must be measured by the official's knowledge at the time in question, not by 'hindsight's perfect vision.'" *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (quoting *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998)). Consequently, the medical defendants cannot be deliberately indifferent to the newly-described consequences of which they were never informed.

Mahon was without Elavil and ibuprofen for twenty-five days between December 15, 2016, and January 9, 2017, but the medical defendants did not exhibit deliberate indifference in responding to his request forms. Notably, none of the medical defendants may renew or order the prescriptions, and each of their pertinent responses noted either Mahon had been seen or would be seen by a treatment provider. The only mention in the record regarding scheduling is that the facility doctor, and not the medical defendants, determines who is seen on a given day. Nothing in the record supports an inference that the medical defendants had the authority to do anything other than add Mahon to the sick call list to be seen and answer his requests and grievances, which they did repeatedly.

### 1. Nurse Dye

Nurse Dye avers that Mahon did not voice a complaint about his eyes during the screening, but Mahon disagrees. Mahon asserts he "did put [Nurse] Dye on notice of [his] vision

issues" by telling her that he had lost his prescription eyeglasses, had very poor, blurry vision, had headaches without eyeglasses, and could not read without them. The visual acuity test on October 17, 2016, measured Mahon's overall vision as 20/30. Mahon also argues that that the doctor later determined his vision problem was bad enough to warrant an appointment with an optometrist.

No reasonable trier of fact could find Nurse Dye liable for others' acts or omissions after November 25, 2016, when Mahon says the relevant constitutional violations began. Furthermore, his alleged complaints to Nurse Dye during the screening do not describe a serious medical need or illustrate a reckless disregard to cruel and unusual punishment. Moreover, there was only a two-week delay between Nurse Dye's screening and Mahon's visual acuity test, and nothing indicates that the delay resulted in substantial harm.

### 2. Nurse Kimmell

No reasonable trier of fact could find Nurse Kimmell liable. Mahon filed a sick call on November 25, 2017, wanting to see the doctor again about back and shoulder pain. Nurse Kimmell responded on December 2 that he had been added to the sick call list to be seen. Mahon filed a grievance on December 30, complaining about not seeing a doctor, and Nurse Kimmell responded on January 9, noting that Mahon had seen the practitioner on January 6. Nothing in Nurse Kimmell's responses supports an inference of deliberate indifference to a serious medical need.

### 3. Nurse Hudson

No reasonable trier of fact could find Nurse Hudson liable. Nurse Hudson began working at the Jail in January 2017. Mahon filed a request on March 8, wanting to be seen for a "bad head and chest cold," to which Nurse Hudson responded the next day, saying Mahon was on the sick call list to be seen. Mahon filed another request four days later, complaining, "[I]

have a bad head and chest cold[.]  [I] have put in 2 previous request[s] over this and my eye glasses issues[.]  [H]owever, it[']s been over 10 days on both[.]"  Nurse Hudson responded six days later, again noting he was on the sick call list to be seen.  Nothing in Nurse Hudson's responses supports an inference of deliberate indifference to a serious medical need about a cold and eyeglasses.

### 4.  Nurse Shields

Nurse Shields responded to many more of Mahon's requests and grievances than the other medical defendants.  Nevertheless, there is no dispute as to a *material* fact, and no reasonable trier of fact could find her liable.

Mahon filed a sick call on November 25 about a runny nose, sinus infection, and head and chest cold, to which Nurse Shields replied on November 30 that he had been added to the sick call list to be seen.  Mahon filed requests on December 14, reiterating his request to see a doctor about the head cold and sinus infection, and on December 16, asking why his medications were not on the "med cart."  Nurse Shields responded to both requests on December 28, noting that he did not have any active prescriptions and that Mahon had been seen in the medical department on December 23.

The medical record supports an inference that Mahon was not seen in the medical department on December 23.  Instead, it is more likely that he was next seen on January 6, 2017, when the physician's assistant renewed the prescriptions for Elavil and ibuprofen.

About two months later on March 4, 2017, Mahon filed a request about having "bad" headaches and wanting to see a doctor for eyeglasses and back pain, to which Nurse Shields responded three days later on March 10, noting he was added to the sick call list to be seen.  After waiting another seven days, Mahon filed a grievance on March 17 because he had not yet been seen.  Nurse Shields responded four days later on March 21, confirming that Mahon was on

the sick call list and would be seen. On March 22, a nurse examined Mahon for his headaches and nasal congestion, diagnosed a common cold, and placed him on the doctor's list to be seen.

About two months later on May 17, Mahon filed a request for eyeglasses, to which Nurse Shields responded six days later, noting the medical department does not provide eyeglasses and that he could obtain them from family or via a furlough request to see an optometrist.

On May 23, Mahon filed a grievance about not having eyeglasses, to which Nurse Shields deemed the grievance invalid because Mahon's vision was recorded as 20/30. She recommended that Mahon ask his counselor for reading eyeglasses.

The entry for December 23, 2016, does not list Mahon's vitals or describe any interaction with Mahon. Consequently, Nurse Shields *may* have incorrectly assumed that Mahon had been evaluated on December 23 when he was not. Whether he had or had not been seen is not material because the medical record did not reflect any active prescription at the time, as Nurse Shields correctly stated, and Mahon was already on the list to see the doctor. Mahon's request from December 16 did not allege he experienced pain and only inquired why his medicine was not on a cart. The record does not support an inference that Nurse Shields could renew the prescriptions, cause the doctor to see Mahon before anyone else, or knew Mahon was experiencing pain. *See Danser*, 772 F.3d at 347 (holding a "failure to alleviate a significant risk that [s]he should have perceived but did not [does] not give rise to a claim. . . ." (internal quotation marks omitted)); *Parrish*, 372 F.3d at 303 ("It is not enough that [a defendant] should have . . . perceived [a] [substantial] risk [of harm]."). At best, the record suggests "an inadvertent failure to provide adequate medical care[,]" which "cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind." *Estelle*, 429 U.S. at 105-06 (internal quotation marks omitted). Negligence is not cognizable in a § 1983 proceeding. *See Johnson v. Quinones*, 145 F.3d 164, 168-69 (4th Cir. 1998) (noting that

treating doctors must actually draw the inference that an inmate's symptoms signify the presence of a particular condition and that a failure to draw such an inference may present a claim for negligence but not a claim under the Eighth Amendment).  Also, Nurse Shields other responses do not evince deliberate indifference to a serious medical need.

### 5.  HSA Palumbo

No reasonable trier of fact could find HSA Palumbo liable.  On January 2, 2017, HSA Palumbo received one of Mahon's grievance appeals, complaining about unanswered medical requests, an expired prescription, and not having been seen at a sick call in ten days.  Mahon saw the nurse practitioner within four days, and HSA Palumbo replied to the grievance by noting Mahon had already seen the practitioner, who had renewed his prescriptions.  Nearly three months later, Mahon filed another grievance appeal that HSA Palumbo reviewed.  The appeal reflected that Mahon complained about a two-week delay to be seen, and Nurse Shield responded on March 21 that Mahon had been seen in January and February and would be seen again in a "timely manner."  Mahon saw a nurse the next day on March 22, and HSA Palumbo answered the grievance appeal on March 24, noting Mahon had met with a nurse for his concerns.  HSA Palumbo left the Jail soon thereafter on April 20, 2017.

### 6.  HSA Smith

No reasonable trier of fact could find HSA Smith liable because neither of her two responses to Mahon's grievance appeals exhibits deliberate indifference to a serious medical need.  The first appeal stemmed from his grievance dated April 13, 2017, complaining about waiting five weeks to see the doctor about his back problem that was getting worse and headaches from not having eyeglasses.  Nurse Shields responded the next day, noting that Mahon was on the list and that the doctor "makes out the daily list when they [sic] get here[.]"  Mahon appealed on April 17, complaining that he was not being picked from the list.  Mahon saw the

doctor three days later on April 20, and, on May 15, HSA Smith replied to the appeal by noting Mahon had seen the doctor on April 20 and had been prescribed medications for pain.

The second appeal stemmed from his grievance dated May 23, 2017, complaining that a doctor in October 2016 had ordered a furlough to allow Mahon to visit an optometrist. Nurse Shields deemed the grievance not valid because his latest visual acuity test measured his vision as 20/30 and he could obtain reading eyeglasses from counselors. In the appeal filed on June 3, Mahon complained that his vision was very bad from an astigmatism, the three reading eyeglasses he tried did not help his vision, and his headaches have continued. HSA Smith responded to the appeal on June 5, explaining, "Poor vision is not considered a medical necessity. You are not currently recommended to be referred for optometry." Although HSA Smith does not reference the doctor's plan from October 2016 to "pursue furlough for eye app[ointment]t," the medical record did not contain a referral to an optometrist nor an approved furlough. Plus, Mahon's vision acuity score improved within five months.

Mahon blames HSA Smith for not adequately supervising all of her subordinates, arguing that she should have noticed and prevented a non-defendant from rescheduling his appointment about the missing pain medications sixteen times. However, supervisory liability under § 1983 may not be predicated on the theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 663 n.7, 691-94 (1978); *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001). While Mahon provided a copy of counsel's motion for a furlough filed in one of the several state courts with authority over his continued pre-trial detention, he failed to establish that a furlough was granted by all courts authorizing his release for the optometry appointment. Nothing in the record supports any inference that any of the medical defendants had the authority to order Mahon's release from confinement in the Jail for a furlough to an optometrist's office.

In sum, the court must grant defendants' motions for summary judgment. Mahon fails to establish any "significant injury" resulting from medical services, or lack thereof, between November 25, 2016, and commencing this action. *See, e.g.*, *Danser*, 772 F.3d at 346 n.8. Furthermore, no dispute of material fact exists, and the record does not demonstrate a serious medical need which any of the medical defendants recklessly disregarded. Nor does it demonstrate a substantial risk of danger that would have been apparent to a reasonable person in the positions held by defendants at the time they received each of Mahon's requests or grievances. Moreover, the record does not establish any basis by which to hold them liable for others' acts or omissions. *Cf. Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Accordingly, the medical defendants' motions for summary judgment are granted.

## IV. CONCLUSION

For the foregoing reasons, defendant "Medical Staff" will be terminated as a party, and D. Kimmell, J. Hudson, and D. Shields will be substituted for defendants Keiosk #5400, Keiosk #6370, and Keiosk #7489-7409, respectively. Docket entries 73 and 83 will be stricken from the record, and Mahon's motions to compel and to amend will be denied. The court will grant the defendants' dispositive motions and will dismiss without prejudice only the claims implicating the validity of the state sentence.

Entered: September 27, 2018.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge